IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILBERT B. WHITE,<br>TDCJ-CID NO. 1095908, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-07-4453 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Wilbert B. White, proceeding pro se and in forma pauperis,
filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254
challenging his state court conviction and requesting an
evidentiary hearing ("Fed. Writ Pet.") (Docket Entry No. 1).  See
28 U.S.C. § 2254 (2000).  In support of his petition, White
attached a Memorandum of Law ("Pet. Memo") (Docket Entry No. 1).
Also pending before the court is Respondent Quarterman's Motion for
Summary Judgment with Brief in Support (Docket Entry No. 15).
White responded by filing an Applicant Pro-Se Traverse/Response to
Respondent Motion for Summary Judgment/Answer (Docket Entry No.
21).  For the reasons discussed below, the court will grant
Quarterman's Motion for Summary Judgment and deny White's Petition
for a Writ of Habeas Corpus and White's request for an evidentiary

hearing.

## I.  Procedural History and Claims

White was indicted for murder and aggravated robbery on March 21, 2001.  Ex parte White, No. WR-67,130-02, at 95, (Tex. Crim. App. Oct. 10, 2007); Ex parte White, No. WR-67,130-01, at 89, (Tex. Crim. App. Oct. 10, 2007).  Both indictments were enhanced by two prior felony convictions.  Id.  White pled not guilty to both charges.  Ex parte White, No. WR-67,130-02, at 102; Ex parte White, No. WR-67,130-01, at 95.  He was found guilty by a jury of both offenses on April 10, 2002, and was given two life sentences.  Id.

White filed a timely appeal to the Texas First Court of Appeals.  White v. State, No. 01-02-420-CR, No. 01-02-421-CR, (Tex. App. -- Houston [1st Dist.] Oct. 23, 2003, pet. ref'd) (mem. op., not designated for publication).  The Court of Appeals affirmed White's convictions on October 23, 2003.  Id. at 6.  White then filed two petitions for discretionary review with the Texas Court of Criminal Appeals ("TCCA") on January 27, 2004.  White v. State, No. 1867-03 (Tex. Crim. App. 2004); White v. State, No. 1866-03 (Tex. Crim. App. 2004).  Both were refused on May 12, 2004.  Id.

White collaterally challenged his convictions by filing two state habeas applications on May 27, 2005.  Ex parte White, No. 67,130-02, at 2; Ex parte White, No. 67,130-01, at 2.  In both applications, he asserted that he had been denied effective

assistance of trial and appellate counsel and challenged the sufficiency of the evidence. Ex parte White, No. 67,130-02, at 14, 17, 28, 44-45; Ex parte White, No. 67,130-01, at 13, 16, 27, 43-44.

On July 1, 2005, the trial court found that the issue of whether White was denied effective assistance of counsel needed to be resolved. Ex parte White, No. 67,130-02, at 56; Ex parte White, No. 67,130-01, at 51. On September 16, 2005, the trial court ordered White's trial counsel, Vivian King, to submit an affidavit responding to White's ineffective assistance allegations and ordered the parties to file proposed findings of fact.[1] Ex parte White, No. 67,130-02, at 69-70; Ex parte White, No. 67,130-01, at 64-65. King filed an affidavit on July 3, 2006, and an amended affidavit on August 20, 2006. Ex parte White, No. 67,130-02, at 74-75, 78-80; Ex parte White, No. 67,130-01, at 69-70, 73-75. On January 12, 2007, the trial court adopted the state's proposed findings of fact and conclusions of law based, in part, on King's affidavit. Ex parte White, No. 67,130-02, at 83-84; Ex parte White, No. 67,130-01, at 78-79. The trial court recommended that the TCCA deny the writs. Id. On June 6, 2007, the TCCA remanded

---

[1]Specifically, the trial court ordered King to respond to the following questions: (1) whether she believed a jury shuffle, challenge to the array, move to quash or discharge the jury, or object to the jury was appropriate; (2) whether she believed a Batson motion was warranted; (3) whether she thought a motion to sever was appropriate; and (4) whether she was aware of an alleged witness, White's father, who was not called to testify. Ex parte White, No. 67,130-02 at 70, Ex parte White, No. 67,130-01 at 65.

the case back to the trial court to make further factual findings on two of White's ineffective assistance claims.  Ex parte White, No. 67,130-02, 67,130-01 (Supp. Record), at 1-3.  Specifically, the court ordered the trial court to make factual findings about counsel's decision not to conduct a fingerprint analysis of shotgun shells found at the crime scene and whether counsel adequately challenged the reliability of eyewitnesses' identification of White.  Id.

The trial court ordered White's attorney to file another affidavit on June 19, 2007.[2]   Ex parte White, No. 67,130-02, 67,130-01 (Supp. Record), at 6-7.  White then filed a motion titled "Applicant's Pro-Se Motion Seeking Full Habeas Corpus Hearing" on July 2, 2007, alleging that he was deprived of an eyewitness identification expert, that he was denied the necessary "tools" to put on a complete defense, and that King did not disclose that she knew the state's main witness.  Id. at 11-15.  King submitted an affidavit on July 17, 2007, addressing the issues identified by the trial court.  Id. at 18-20.  On August 6, 2007, the trial court adopted the proposed findings of fact submitted by the State and

---

[2]Specifically, the trial court ordered King to address the following questions: (1) whether she conducted any type of investigation to determine if someone else's fingerprints were on the shells; (2) whether she thought it was necessary to seek a fingerprint analysis of the shotgun shells; (3) whether she conducted any investigation into the potential defense that the eyewitnesses mis-identified White; and (4) whether she thought a mis-identification defense was viable to present at trial.  Ex parte White, No. 67,130-02, 67,130-01 (Supp. Record) at 6-7.

sent the case back to the TCCA with the recommendation that relief be denied.  Id. at 23-24.  The TCCA denied both applications without written orders based on the court's findings on October 10, 2007.  Ex parte White, No. 67,130-02, at cover; Ex parte White, No. 67,130-02, at cover.   White filed this petition for a writ of habeas corpus on December 3, 2007, (Docket Entry No. 1).[3] [4]  The court understands his petition to assert the following grounds for relief:

1. The state post-conviction proceeding was deficient because:

   a. the TCCA abused its discretion when relying on the results of a paper hearing;

   b. he was denied a judicial forum at the state level to develop his constitutional claims; and

   c. the TCCA did not address his claim that he was denied necessary "tools" for his defense;

2. He was denied equal protection when the state habeas courts did not properly apply Texas and federal law to his claims;

3. Trial counsel was ineffective for:

---

[3]"Under the 'prison mailbox rule,' a pro se prisoner's federal habeas corpus petition is deemed filed when the prisoner delivers it to prison officials according to the proper prison procedures." Starns v. Andrews, 524 F.3d 612, 616 n.1 (5th Cir. 2008).  White declares that he placed the petition in the prison mailing system to be copied and sent on December 3, 2007 (Docket Entry No. 5 at 3).  Therefore, the court considers the petition filed on December 3, 2007.

[4]Because White was convicted and sentenced in Harris County, Texas, this court has jurisdiction over White's petition pursuant to 28 U.S.C. § 2241(d).  See 28 U.S.C. § 2241(d) (2000); Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

   a. failing to consult and present an eyewitness
    identification expert;

   b. failing to pursue a fingerprint analysis of the
    shotgun shells;

   c. failing to disclose she knew the state's main
    witness; and

   d. failing to present an alibi defense;

  4. He was denied access to the "tools" necessary to impeach
   the testimony of the eyewitness to the murder.

Fed. Writ Pet. at 7-8; <u>See generally</u> Pet. Memo

  Quarterman filed a Motion for Summary Judgment (Docket Entry No. 15), to which White filed a Traverse (Docket Entry No. 21). Quarterman contends that claims 3a and 4 are unexhausted and procedurally barred, and the remaining claims should be dismissed on their merits.  <u>Id.</u>

## II.  Standards of Review

### A.  Summary Judgment

  A court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Material facts are facts that may "affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of proving the absence of any genuine issues of material fact. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). Once the movant has met this burden, the non-movant must establish that there is a genuine issue for trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). If the non-movant is unable to meet this burden, the motion for summary judgment will be granted. Fed. R. Civ. P. 56(c).

When considering a summary judgment motion the court resolves any doubts and draws any inferences in favor of the non-moving party. Hunt v. Cromartie, 119 S. Ct. 1545, 1551-52 (1999). In a habeas corpus proceeding, however, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be correct." This statute overrides the ordinary summary judgment rule. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004). Therefore, the court will accept any findings of fact made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence. Id.

## B.   Liberal Construal of Pro Se Petitions

In a habeas case the court should liberally construe the petitions of pro se prisoner litigants. See Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (per curiam). Procedural rules must

give way at times "because of the unique circumstance of incarceration." McNeil v. United States, 113 S. Ct. 1980, 1984 (1993) (citing Houston v. Lack, 108 S. Ct. 2379 (1988)). Overall, the court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." Haines, 92 S. Ct. at 596.

## C.   Habeas Corpus

The provisions of Section 2254(d) set forth "a highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 117 S. Ct. 2059, 2066 n.7 (1997). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[P]ure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)." Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

-8-

materially indistinguishable facts." <u>Williams v. Taylor</u>, 120 S.
Ct. 1495, 1523 (2000).  A decision is an unreasonable application
of clearly established federal law "if the state court identifies
the correct governing legal principle . . . but unreasonably
applies that principle to the facts of the prisoner's case."  <u>Id.</u>

In reviewing a federal habeas petition, "a determination of a
factual issue made by a State court shall be presumed to be
correct," and the petitioner "shall have the burden of rebutting
the presumption of correctness by clear and convincing evidence."
28 U.S.C. § 2254(e)(1).

### III.  <u>Analysis</u>

**A.    Exhaustion of State Remedies for Claims 3a, 3c, and 4**

Quarterman asserts that some of White's claims have not been
exhausted (Docket Entry No. 18 at 6).  Specifically, Quarterman
contends that White has not "fairly presented" claims 3a and 4 to
the TCCA because White did not mention these in his initial state
habeas application.  <u>Id.</u>  Additionally, claim 3c, which Quarterman
did not address in his brief but which this court, in liberally
construing White's petition, has identified as a claim,  might also
be unexhausted for the same reason.  Quarterman also asserts that
these claims are procedurally defaulted pursuant to Texas' abuse of
writ doctrine.

Federal courts may not grant habeas relief to state prisoners
unless they have first exhausted all remedies available in state

-9-

court.  28 U.S.C. § 2254(b)(1).  In order to properly exhaust state remedies, a state prisoner must "fairly present" all of his claims to the state court.  Picard v. Connor, 92 S. Ct. 509, 512 (1971). An unexhausted claim that would be procedurally barred in state court is procedurally defaulted from habeas review in federal court unless the petitioner can show cause and actual prejudice.  Nobles v. Johnson, 127 F.3d 409, 423 n.33 (5th Cir. 1997).

The Texas abuse of writ doctrine procedurally bars a successive claim by a petitioner that raises grounds that could have been raised in the first petition, unless the petitioner can show cause.  Nobles, 127 F.3d at 423.  The Texas abuse of writ doctrine is an adequate state procedural bar foreclosing federal habeas review.  Coleman v. Quarterman, 456 F.3d 537, 542 (5th Cir. 2006).

White contests Quarterman's assertion that these claims are unexhausted.  The court need not resolve the controversy, however, because as the court will explain, the claims fail whether they are exhausted or not.  If the claims are unexhausted, they are procedurally defaulted; if they are exhausted, they fail on the merits.

Assuming claims 3a, 3c, and 4 are unexhausted, White would have to file a successive petition with the Texas state court to properly exhaust them.  However, White has not given a reason, nor has he alleged a cause, for why he could not raise these grounds in

his first habeas petition. Therefore, these claims would be procedurally barred under the abuse of writ doctrine. Because the claims would be procedurally barred in state court, the claims would be procedurally defaulted from federal habeas review unless White can overcome the default by showing cause and actual prejudice.

In order to show cause, the petitioner must "establish that an external factor objectively impeded his ability to comply with Texas's procedural rule." Moore v. Quarterman, 534 F.3d at 454. In order to demonstrate actual prejudice, the petitioner must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Smith v. Quarterman, 515 F.3d 392, 403 (5 th Cir. 2008) quoting (Murray v. Carrier, 106 S. Ct. 2639, 2639 (1986)).

White has not alleged, and thus has not established, cause or prejudice. Therefore, if these claims are unexhausted, White would not qualify for the exceptions and his claims would be procedurally defaulted from federal habeas review.

Because White disputes whether these claims are exhausted, this court will address them, along with White's other claims, on the merits. See 28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the

-11-

failure of the applicant to exhaust the remedies available in the courts of the State.").

## B. Deficient State Habeas Process

White alleges that the state habeas proceedings were deficient because (1) the TCCA relied on the results of a paper hearing held by the trial court, Fed. Writ Pet. at 7; Pet. Memo at 2, 4-9; (2) it denied him a judicial forum at the state level to develop the legal and factual bases of his claims, Fed. Writ Pet. at 7; Pet. Memo at 2-3; and (3) the TCCA did not address whether he was denied "tools" necessary for his defense, which must be provided under Ake v. Oklahoma, 470 U.S. 68 (1985).  Pet. Memo at 10-11.

However, "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir. 2001) (quoting Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999)).  "An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'" Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) (quoting Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir. 1987)). Accordingly, White does not present a cognizable claim for habeas corpus relief on these grounds.

## C. Equal Protection Claim

White asserts that the TCCA, on collateral review, violated the Equal Protection Clause of the 14th Amendment because it failed to equally apply state and federal law by not allowing him to present a complete defense.  Fed. Writ Pet. at 7; Pet. Memo at 3-4, 12-15.   In order to make an equal protection claim, both intentional discrimination and a disparate impact must be shown.  See Washington v. Davis, 96 S.Ct. 2040, 2047-48 (1976).  White has not made a claim of intentional discrimination by either the trial court or the TCCA.   Therefore, White has failed to state an equal protection claim.  Moreover, as the court has explained, attacks on state habeas proceedings are not cognizable in a federal habeas proceedings.  Rudd, 256 F.3d at 319.  Accordingly, the court will deny relief on this ground.


## D. Denial of Effective Trial Counsel

White claims that he was denied effective counsel because his attorney, Vivian King, failed to (1) consult and present an eyewitness identification expert, Fed. Writ Pet. at 8; Pet. Memo at 4, 7-10; (2) failed to pursue a fingerprint analysis of shotgun shells found at the crime scene, Pet. Memo at 4-5; (3) failed to disclose the fact that she knew the state's main witness, Pet. Memo at 7; and (4) did not present an alibi defense, Fed. Writ Pet. at 8; Pet. Memo at 6-7, 9.

A petitioner asserting ineffective assistance of counsel must

demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). The first prong of the test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 104 S. Ct. at 2064. Counsel's representation must have been objectively unreasonable. Id. Reasonableness is measured against prevailing professional norms and must be viewed under the totality of the circumstances. Id. at 2065. The court's review of counsel's performance is extremely deferential; the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. Under the second prong the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Wilkerson v. Collins, 950 F.2d 1054, 1064 (5th Cir. 1992). Where there is overwhelming evidence of guilt the court is not likely to find, absent very compelling evidence, that there is a reasonable probability that, but for the attorney's deficient performance, the outcome would have been different. See e.g. Sayre v. Anderson, 228 F.3d 631, 635 (5th Cir. 2001); Moawad v. Anderson, 143 F.3d 942, 946 (5th Cir. 1998).

The petitioner has the burden of proof on an ineffective

-14-

assistance of counsel claim.  Alexander v. McCotter, 775 F.2d 595, 601 (5th Cir. 1985).  If the petitioner makes an insufficient showing on one prong of the test, the court need not address the other.  Strickland, 104 S. Ct. at 2069.

1. Failure to Consult and Present an Eyewitness Identification Expert

White asserts that his counsel was ineffective for failing to consult and present an eyewitness identification expert.  Fed. Writ Pet. at 8; Pet. Memo at 4, 7-10.  Specifically, White argues that an eyewitness identification expert would have been able to raise a reasonable doubt by testifying on the vagaries of eyewitness identification with regard to the murder conviction.  Id.  White, however, offers no evidence that such a witness was available and would have testified at trial, or that such a witness would have offered testimony favorable to White's defense.  See Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) (holding that in order to demonstrate prejudice from an uncalled witness, the petitioner must show that the witness would have been available to testify at trial and would have offered favorable testimony).

In White's state habeas application, he asserted that counsel failed to adequately present a mis-identification defense.[5]  Ex

---

[5]The court assumes for the purposes of the following analysis that this more general claim raised in White's state habeas proceeding encompasses the more specific claim he raises here.  To the extent this claim in White's state habeas proceeding does not encompass the claim he raises here, as explained above, it is unexhausted and procedurally defaulted.

parte White, No. 67,130-02, at 17-18, 25; Ex parte White, No. 67,130-01, at 16-17, 24.  The state habeas court ordered King to file an affidavit addressing whether she conducted any investigation into the defense of misidentification and whether she thought it was viable to present it at trial.[6]  Ex parte White, No. 67,130-02, 67,130-01 (Supp Record), at 5.

King stated in her affidavit that she did conduct an investigation by interviewing the witnesses by phone, interviewing White's girlfriend (with whom he was living at the time of the murder), and interviewing White's girlfriend's oldest son (who was with White when he was arrested).  Id. at 18-20.  She also spoke with the eyewitnesses to the aggravated robbery that was committed a few blocks away shortly after the murder, for which White was also convicted.  Id. at 19.  Those witnesses testified at trial and identified White in both a photographic line-up and during the trial proceeding.  Id. at 80, 93-94.  From this investigation, King "did not believe that a mis-identification defense was viable to present in trial because after speaking with eyewitnesses and knowing the truthful reputation of Reverend Punch, the State's star witness, I believed them to be truthful."  Id. at 20.

The state habeas court found that the affidavit submitted by

---

[6]The trial court, however, did not order King to address her reasons for not calling an eyewitness identification expert because it was not until more than two years after his initial state habeas application that White specified that particular aspect of the mis-identification defense in a document he filed with the TCCA titled "Applicant's Pro-Se Motion Seeking Full Habeas Corpus Hearing."  Ex parte White, No. 67,130-02, 67,130-01 (Supp. Record), at 11, 13.

King was true and credible. Ex parte White, No. 67,130-02, 67,130-01 (Supp Record), at 23-24. This court must accept the state court's factual findings as true unless White presents "clear and convincing evidence" that they are incorrect. 28 U.S.C. § 2254(e)(1). White has not offered evidence to contradict these findings, much less "clear and convincing evidence." Id. In light of these findings of fact, the state habeas court concluded that King provided reasonably effective assistance. Ex parte White, No. 67,130-02, 67,130-01 (Supp Record), at 23-24.

Furthermore, the trial record reflects that even though King investigated the mis-identification defense and thought it weak, she nevertheless argued it at trial. (3 R.R. at 62-65; 5 R.R. at 6-7, 9, 7-14). She questioned Punch about the possibility of mis-identification, about the lighting conditions, his ability to see the shooter, and the possibility that he mis-identified White as the shooter. (3 R.R. 62-65). In her closing argument, King spoke about how it was dark when the crime took place and that Punch initially mistook the shotgun for an umbrella. (5 R.R. at 6-7, 9). She also pointed out that Punch only saw the shooter for a short period of time and it was a dangerous situation, arguing that those were not good conditions to get a good look at someone. Id. at 7-14. Finally, King specifically argued again that it was possible Punch mis-identified White and urged the jurors to reconsider that as a possibility. Id. at 10, 13.

The trial record, therefore, further strengthens the state

habeas courts' conclusion that King provided reasonably effective assistance.  White has failed to show that this conclusion was contrary to clearly established federal law or involved an unreasonable application of federal law.  Therefore, White is not entitled to relief on this ground.

    2. <u>Failure to Pursue Fingerprint Analysis</u>

White claims that his counsel should have pursued a fingerprint analysis of the shotgun shells left at the crime scene. Pet. Memo at 5-6.  He asserts that the results of that testing, together with testimony from an eyewitness identification expert, would have been enough to create a reasonable doubt for the jury. <u>Id.</u>

Like the mis-identification defense, this was an issue that the state habeas court ordered King to address in an affidavit. <u>Ex parte White</u>, No. 67,130-02, 67,130-01 (Supp Record), at 5.  King stated that she did not believe it beneficial to conduct a fingerprint analysis of the shotgun shells because "there was never any evidence that Mr. White actually loaded the shotgun, touched the shotgun shells, or owned the shotgun.  The only issue was whether or not Mr. White used the shotgun to shoot Complainant." <u>Id.</u> at 18.  King also stated that she did not believe a fingerprint investigation was necessary because there were eyewitnesses who saw White shoot the Complainant.  <u>Id.</u>  Finally, King was worried about seeking a fingerprint analysis because this would have allowed the state to enter evidence during trial of a video of White holding up

a store clerk using a shotgun.  <u>Id.</u> at 18-19.

The state habeas court found King's affidavit to be true and credible and based on it concluded that King made a reasonable strategic decision not to pursue a fingerprint analysis.  <u>Ex parte White</u>, No. 67,130-02, 67,130-01 (Supp Record), at 23-24.  White has not presented any evidence, much less "clear and convincing evidence," to show that the state habeas court's factual findings are incorrect.  <u>See</u> 28 U.S.C. § 2254(e)(1).  Nor has White presented evidence sufficient to persuade the court that King's strategic decision, in light of the circumstances, fell outside the "wide range of reasonable professional assistance."  <u>Alexander</u>, 775 F.2d at 602 (citing <u>Strickland</u>, 104 S.Ct. At 2065-66).  Therefore, the court concludes that the state habeas court's rejection of this claim was not contrary to and did not involve an unreasonable application of <u>Strickland</u>.  <u>See</u> 28 U.S.C. § 2254(d)(1).  Accordingly, White is not entitled to relief on this ground.

3. <u>Failure to Disclose that She Knew State's Main Witness</u>

White contends that King provided ineffective assistance because she knew the state's main witness for the murder conviction and failed to disclose that fact to him.  Pet. Memo at 7.  More specifically, he asserts that King's performance was deficient because had she not known Punch, she would have more ardently impeached his credibility.  <u>Id.</u>

Conflict of interest cases that do not address multiple or serial clients by a lawyer are best dealt with under <u>Strickland</u>.

-19-

Beets v. Scott, 65 F.3d 1258, 1265-68 (5th Cir. 1995).  Punch was not a multiple or serial clients of King's, so this claim is subject to a Strickland analysis.

In her affidavit to the state habeas court, King stated that she and Punch knew each other through law school and the last time she had contact with him was in May of 1990 - almost twelve years prior to White's trial.  Ex parte White, No. 67,130-02, 67,130-01 (Supp Record), at 19.  It is unclear how failing to disclose this information to White resulted in any prejudice to him or affected King's performance.  Moreover, as explained above, King attempted to raise doubts about Punch's testimony on cross-examination. (3 R.R. at 62-65; 5 R.R. at 6-7, 9, 7-14).  Therefore, the court concludes that King's performance was not deficient and is not entitled to relief on this ground.

4. Failure to Present an Alibi Defense

White claims that King was ineffective for not contacting his father, Gen White, who White alleges would have provided alibi testimony at trial.  Pet. Memo at 6-7, 9.  White raised the same claim in his state habeas petition, and the state habeas court ordered King to address the issue in an affidavit.  Ex parte White, No. 67,130-02, at 69; Ex parte White, No. 67,130-01, at 64.

In her affidavit, King stated that she had a subpoena issued for five witnesses, one of whom was Gen White.  Ex part White, No. 67,130-02, at 75; Ex parte White, No. 67,130-01, at 70.  King further stated that she "interviewed Wilbert Gen White, [White]'s

father.  Wilbert Gen White told me that he could not be an alibi witness for [White] or assist in providing mitigation testimony during punishment." Id.  Finally, when Gen White did not show up at trial, King stated that White did not want to have him arrested and brought into court to testify.  Id.

The state habeas court found the facts as alleged by King to be true and correct.  Ex part White, No. 67,130-02, at 83-84; Ex parte White, No. 67,130-01, at 78-79.  Further, based on King's affidavit, the state court concluded that the totality of King's representation was sufficient "to protect his right to reasonably effective assistance of counsel in trial. . . ." Ex parte White, No. 67,130-02, at 83-84; Ex parte White, No. 67,130-01, at 78-79.

White has not presented any evidence other than a conclusory affidavit he filed in the state district court to demonstrate that the state court's factual findings were incorrect.  Fed. Writ. Pet. "Amended Second Supplement Affidavit of Wilbert Bruce White," 2, 4. This falls significantly short of being the kind of evidence that is "clear and convincing." 28 U.S.C. § 2254(e)(1).  In light of these facts, the court concludes that the state habeas court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of Strickland, and therefore White is not entitled to relief on this ground.  See 28 U.S.C. § 2254(d)(1).

**E. Denied access to the "tools" necessary to impeach eyewitnesses**

White claims that he was entitled to have an eyewitness

identification expert testify because the U.S. Supreme Court has determined that eyewitness identification is inherently unreliable. Pet. Memo at 10-12.  By not giving him that "tool", he contends that he was denied the ability to mount a proper defense and impeach the eyewitnesses.  Id.  White bases his claim on Ake v. Oklahoma, 105 S. Ct. 1087 (1985) (holding that indigent defendants are entitled to basic tools for an adequate defense).

     The Fifth Circuit has stated that "no authority exists that requires a trial court to appoint an expert in eyewitness identification." Ford v. Dretke, 135 F. App. 769, 772 (5th Cir. 2005) (unpublished).  The court in Ford held that extending Ake to include a right to an eyewitness identification expert creates a new rule of law and consequently cannot be a basis for granting relief in a habeas proceeding under Teague v. Lane, 109 S. Ct. 1060, 1078 (1989) (holding that habeas petitions  cannot be used to create new constitutional rules of criminal procedure).

     Alternatively, if this claim were not barred by Teague, the court concludes that it fails on its merits.  Non-psychiatric experts should be provided to indigent defendants only when the evidence is "both 'critical' to the conviction and subject to varying expert opinion." Moore v. Johnson, 225 F.3d 495, 502 (5th Cir. 2000) (citing Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993)).  In order to be critical to the conviction, an indigent defendant must demonstrate "something more than a mere possibility of assistance" by the expert testimony.  Yohey, 985 F.2d at 227.

Furthermore, the petitioner does not have a right to an expert when he offers "little more than undeveloped assertions that the requested assistance would be beneficial." <u>Caldwell v. Mississippi</u>, 105 S. Ct. 2633, 2637 n.1 (1985).

White has argued that an eyewitness identification expert would have helped him by impeaching the State's main witness, David Punch. Pet. Memo at 11. White fails to demonstrate, however, how the testimony would be beneficial, much less critical, to his conviction. White asserts that the testimony of the expert would only "begin to balance" the credibility of Punch. White's Traverse at 21. This appears to be nothing more than a "mere possibility of assistance." <u>Yohey</u>, 985 F.2d at 227. Additionally, it appears White only wants an eyewitness expert to testify generally about the "vagaries" of the eyewitness identification process. But as the court pointed out in <u>United States v. Alexander</u>, 816 F.2d 164, 169 (5th Cir. 1987), evaluating the credibility of witnesses is the role of the jury. Finally, White has failed to allege, much less demonstrate, how eyewitness identification evidence is "subject to varying expert opinion." <u>Moore</u>, 225 F.3d at 502. Therefore, White is not entitled to relief on this ground.

**F.   Request for an Evidentiary Hearing**

White has requested an evidentiary hearing. Pet. Memo at 12, 15. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the granting of an evidentiary hearing. <u>See</u> 28

U.S.C. § 2254(e)(2).  White's claims do not rely on a "new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2254(e)(2)(A)(i), or on a "factual predicate that could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii).  Similarly, White has not shown clear and convincing evidence of a constitutional error.  See 28 U.S.C. § 2254(e)(2)(B).  Therefore, White's motion for an evidentiary hearing will be denied.

## IV.  Certificate of Appealability

Although White has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA sua sponte. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).  To obtain a COA for claims denied on the merits White must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004).  To make such a showing White must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. Tennard, 124 S. Ct. at 2569.  When the court denies relief based on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right," and that they "would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000). For the reasons stated in this Memorandum Opinion and Order, White has not made a substantial showing of the denial of a constitutional right, nor has he shown that a jurist of reason would debate whether the procedural rulings in this case are correct. Accordingly, a certificate of appealability will not issue in this case.

## V. Conclusion and Order

The court **ORDERS** the following:

1.   White's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED.**

2.   White's motion for an evidentiary hearing (Docket Entry No. 1) is **DENIED.**

3.   Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED.**

4.   A certificate of appealability is **DENIED.**

**SIGNED** at Houston, Texas, on this the 19th day of June, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE